UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:10CV2368 HEA |
| | ) | |
| FIDELITY NATIONAL TITLE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment, [Doc. No. 80].  Plaintiff, despite having received two extensions to oppose or otherwise respond, has failed to respond to the motion.  For the reasons set forth below, the Motion is granted.

## Introduction

Plaintiff brought this action seeking damages from Defendant for alleged insurance contract breaches relative to certain pieces of real estate located at 4433 Kossuth, St. Louis, Missouri 63115 and 19015 Old Jamestown Road, Florissant, Missouri 63034. Plaintiff also seeks a Declaratory Judgment from this Court that he is an insured party.  Defendant seeks summary judgment based on its claim that Plaintiff has engaged in a scheme of inequitable conduct, that he never paid for

and is not covered under any insurance contract, and that, even if he had paid for

and received an insurance policy from Defendant, his claims would not be

covered.

## Facts and Background

_____ Rule 7-4.01 (E) of this Court's Local Rules provides:

> Rule 7-4.01(E)  A memorandum in support of a motion for summary
> judgment shall have attached a statement of uncontroverted material
> facts, set forth in a separately numbered paragraph for each fact,
> indicating whether each fact is established by the record, and, if so,
> the appropriate citations. Every memorandum in opposition shall
> include a statement of material facts as to which the party contends a
> genuine issue exists. Those matters in dispute shall be set forth with
> specific references to portions of the record, where available, upon
> which the opposing party relies. The opposing party also shall note
> for all disputed facts the paragraph number from movant's listing of
> facts. All matters set forth in the statement of the movant shall be
> deemed admitted for purposes of summary judgment unless
> specifically controverted by the opposing party.

Plaintiff did not respond to Defendants' Statement of Uncontroverted Material

Facts. Those facts, set out below, are therefore deemed admitted.

Plaintiff owns BIS Investments, L.L.C. ("BIS Investments").  One of BIS

Investments' organizers is Kimberly Haskins, who stated in paperwork filed with

the Missouri Secretary of State's office that her address was 2555 Stirrup Lane,

Florissant, Missouri, 63033 as of 2002.

On January 22, 2004, BIS Investments recorded a deed of trust against the

real estate commonly known as 4433 Kossuth Avenue in St. Louis, Missouri

("4433 Kossuth").  The 1/22/04 BIS Deed of Trust states that it secures repayment

of $60,000.00 by Clara Jones.  The 1/22/04 BIS Deed of Trust states that it was

executed by Claudia Dorsey on behalf of Clara Jones.  By no later than March 24,

2004, Plaintiff knew that the following deed of trust had been recorded against

4433 Kossuth prior to the recordation of the 1/22/04 BIS Deed of Trust: deed of

trust dated December 29, 1999 and recorded on January 14, 2000 in Book M1601,

Page 1909 of the St. Louis City, Missouri recorder's office.  The 12/29/99 Jones

Deed of Trust states that it secures repayment of $13,000.00 by Clara Jones.  The

12/29/99 Jones Deed of Trust names Tandy L. Hairston as the trustee for the

beneficiary.

 Plaintiff entered into a contract to purchase 4433 Kossuth for $60,000.00

on October 27, 2004.  At the time he contracted to purchase 4433 Kossuth for

$60,000.00, Plaintiff had actual knowledge that the 12/29/99 Jones Deed of Trust

had been recorded.

 On October 27, 2004,  the same day as plaintiff contracted to purchase 4433

Kossuth for an amount of money equal to the 1/22/04 BIS Deed of Trust, a

document purporting to release the 12/29/99 Jones Deed of Trust was executed.

(The 10/27/04  Release).  The signature on the 10/27/04 Release reads "Tandy L.

Harrison" while the notary block states that it was signed by "Tandy L. Hairston" on behalf of M L & Foreclosure Services, Inc. ("M L & L Foreclosure").

The 10/27/04 Release was notarized by Barbara Jones.  As of October 27, 2004, Barbara Jones owned the real estate commonly known as 2555 Stirrup Lane, Florissant, Missouri, 63033, which is the same address that Kimberly Haskins listed as her own in BIS Investments' Articles of Organization. Barbara Jones was BIS Investments' "office manager".

Plaintiff knew Hairston prior to October 27, 2004.

M L & L Foreclosure was formed for the purpose of fulfilling trustee functions in conjunction with real estate foreclosures.

Hairston was never employed by, associated with, or affiliated with M L & L Foreclosure in any way.  Hairston did not have authority to execute the 10/27/04 Release on behalf of M L & L Foreclosure.

As of October 27, 2004, M L & L did not have authority to release the 12/29/99 Jones Deed of Trust on behalf of its owner and holder.

Plaintiff acknowledges that at the time Hairston purportedly signed the 10/27/04 Release, he was serving a prison sentence in Tennessee.  The 10/27/04 Release was filed with the St. Louis City, Missouri recorder's office on November 2, 2004.

- 4 -

Plaintiff closed his acquisition of 4433 Kossuth on December 9, 2004.

Plaintiff acquired title to 4433 Kossuth on December 9, 2004. (The 12/9/04 Jones

– Howard Deed).  The 12/9/04 Jones – Howard Deed states that it was executed

by John Jones on behalf of Clara Jones.  John Jones had previously been granted

power of attorney for Clara Jones. (The John Jones – Clara Jones Power of

Attorney).  The John Jones – Clara Jones Power of Attorney was notarized by

Barbara A. Jones, the same person who executed the 10/27/04 Release and who

then owned the real estate which one of BIS Investments' organizers listed as her

address in its Articles of Organization.

In conjunction with his acquisition of 4433 Kossuth, plaintiff executed a

Settlement Statement dated December 9, 2004 (The Buyer's Kossuth Settlement

Statement).  The Buyer's Kossuth Settlement Statement identifies Plaintiff as a

"borrower."  Line 120 of the Buyer's Kossuth Settlement Statement states as

follows: "Gross amount due from borrower: $64,545.93."  Line 202 of the

Buyer's Kossuth Settlement Statement states as follows: "Principal amount of new

loan(s): $42,000.00."  Line 203 of the Buyer's Kossuth Settlement Statement

states as follows: "Existing loan(s) taken subject to: $12,000.00."  Line 303 of the

Buyer's Kossuth Settlement Statement states as follows: "CASH (X) FROM ( )

TO BORROWER: $10,545.93."  The sum of Lines 202, 203, and 303 of the

Buyer's Kossuth Settlement Statement is equal to the amount stated in Line 120.

There is recorded in the St. Louis City, Missouri's land records a deed of trust which is dated December 9, 2004 and which purports to have been executed by Plaintiff in favor of People's Choice Home Loan, Inc. (The 12/9/04 Howard – People's Choice Deed of Trust).  The 12/9/04 Howard – People's Choice Deed of Trust states that Plaintiff is granting a security interest in 4433 Kossuth.  The 12/9/04 Howard – People's Choice Deed of Trust states that it secures repayment of a promissory note in the amount of $42,000.00.  The amount of the promissory note referenced in the 12/9/04 Howard – People's Choice Deed of Trust is equal to Line 202 of the Buyer's Kossuth Settlement Statement.

Plaintiff did not acquire title to 4433 Kossuth until December 9, 2004.  The sum total of money paid by plaintiff at closing in order to acquire 4433 Kossuth was $10,545.93.  The remainder of plaintiff's purchase price for 4433 Kossuth was paid with proceeds from a "new" loan in the amount of $42,000.00 and a $12,000.00 loan that Plaintiff took title "subject to."   Plaintiff has repeatedly attacked the validity of the 12/9/04 Howard – People's Choice Deed of Trust and the purchase-money debt which it secures, but not the 12/9/04 Jones – Howard Deed by which he acquired title to 4433 Kossuth.

In Cause No. 0722-CC85322, Plaintiff sought to declare the 12/9/04

- 6 -

Howard – People's Choice Deed of Trust void.  In Cause No. 0922-CC00965,

plaintiff sought to cancel the 12/9/04 Howard – People's Choice Deed of Trust .

In Cause No. 0922-CC09447, Plaintiff sought to declare both the 12/29/99 Jones

Deed of Trust and the 12/9/04 Howard – People's Choice Deed of Trust void and

also sought to quiet title to 4433 Kossuth in his name. In Cause No. ED 96756,

Plaintiff appealed the judgment divesting him of title to 4433 Kossuth and

quieting title in the name of Bank of America, N.A.   In Case No. 4:10-cv-02367,

which was filed on December 20, 2010, Plaintiff requested that he be declared the

"fee simple" owner of 4433 Kossuth.

In conjunction with Plaintiff's acquisition of 4433 Kossuth, BIS

Investments issued a written payoff statement for $60,000.00.  (The BIS

Investments Kossuth Payoff Statement).  The BIS Investments Kossuth Payoff

Statement states that it was faxed to "The Mortgage Source" by "Barb Jones."

Also in conjunction with plaintiff's acquisition of 4433 Kossuth, a Seller's

Settlement Statement was also prepared. (The Seller's Kossuth Settlement

Statement").  The Seller's Kossuth Settlement Statement states that $60,000.00

was paid to Plaintiff's company, BIS Investments, in conjunction with Plaintiff's

acquisition of 4433 Kossuth.  None of the proceeds disbursed in conjunction with

Plaintiff's acquisition of 4433 Kossuth were paid towards any mortgages other

than the 1/22/04 BIS Deed of Trust.

Plaintiff closed his acquisition of 4433 Kossuth at America's Title Source, Inc. ("ATS").

As of June 2004, ATS's Directors were Robert E. Metzler and Charlene Barban.

The Mortgage Source, LLC (The Mortgage Source) is a Missouri LLC formed by Kerry Barban and for whom Robert E. Metzler serves as registered agent.  The Mortgage Source was paid a broker fee in conjunction with the $42,000.00 loan that was made in conjunction with plaintiff's acquisition of 4433 Kossuth.

In conjunction with Plaintiff's acquisition of 4433 Kossuth, title work was ordered from ATS by "Derrick Howard" of "Mortgage Source."

In 2004, ATS was authorized to issue commitments for title insurance and policies of title insurance on behalf of Defendant.  Defendant terminated its agency agreement with America's Title Source on August 14, 2005 and ATS was thereafter not authorized to issue commitments for title insurance or policies of title insurance on behalf of Defendant.

Following the termination of ATS as an agent, Defendant took possession of various files which had been created and maintained by ATS. One of the ATS

- 8 -

files now in Defendant's possession is for the transaction in which Plaintiff

acquired 4433 Kossuth.  The ATS file contains a marked-up document which

includes a handwritten notation that the 12/29/99 Jones Deed of Trust was

"released."

Defendant requires that its agents report the issuance of policies and remit

portions of premiums collected in exchange.  Defendant made these same

requirements of ATS.   ATS never reported to Defendant that it had issued – or

was supposed to issue – a policy of title insurance to Plaintiff in conjunction with

Plaintiff's acquisition of 4433 Kossuth.  ATS never remitted to Defendant any

portion of any premiums that it may have collected in conjunction with plaintiff's

acquisition of 4433 Kossuth.  To the extent Plaintiff is ever deemed to have been

owed a policy of title insurance relating to his acquisition of 4433 Kossuth, the

form of that policy would be the 1992 Owner Policy promulgated by the

American Land Title Association.

The first correspondence that Defendant ever received from Plaintiff

relative to 4433 Kossuth was a letter dated August 6, 2009.  Subsequent to August

6, 2009, Defendant received correspondence from Plaintiff relating to 4433

Kossuth on the following dates: November 29, 2009; August 9, 2010; August 12,

2010; September 27, 2010; November 2, 2010; December 9, 2010; January 12,

2011; May 16, 2011; and July 18, 2011.

Since August 6, 2009, Defendant has sent correspondence to Plaintiff relating to 4433 Kossuth on the following dates: September 8, 2009; January 15, 2010; September 17, 2010; and August 3, 2011.

On October 27, 2004 – the same day on which the 10/27/04 Release was signed – Plaintiff's company, BIS Investments, took assignment of a deed of trust against 19015 Old Jamestown Road in Florissant, Missouri (19015 Old Jamestown). (The 10/27/04 Assignment).   The 10/27/04 Assignment purported to assign to BIS Investments a $199,500.00 deed of trust given by Jeremy Smith in favor of Cendant Mortgage Corporation on August 31, 2001. (The 10/31/01 Smith – Cendant Deed of Trust).

The 10/27/04 Assignment stated that it was granted by Christopher Hansen on behalf of Cendant Mortgage Corporation.   The 10/27/04  Assignment was notarized by Barbara A. Jones, the same person who notarized the 10/27/04 Release and the John Jones – Clara Jones Power of Attorney, and who then owned 2555 Stirrup Lane in Florissant, Missouri, which is the same address listed by one of BIS Investments' organizers in its Articles of Organization.

On November 10, 2003 – and prior to the execution of the 10/27/04 Assignment – Hansen – who executed the 10/27/04 Assignment on behalf of

Cendant Mortgage Corporation – had been granted power of attorney for Jeremy Smith. (The 10/10/03 Smith – Hansen POA).   The 10/10/03 Smith – Hansen POA was notarized by Barbara A. Jones, the same person who notarized the 10/27/04 Assignment, the 10/27/04  Release, and the Jones Power of Attorney, and who then owned 2555 Stirrup Lane in Florissant, Missouri, which is the same address listed by one of BIS Investments' organizers in its Articles of Organization.

At the time the 10/31/01 Smith – Cendant Deed of Trust was purportedly assigned to BIS Investments by Hansen on behalf of Cendant Mortgage Corporation, it had already been extinguished via foreclosure.  (The 4/1/04 Trustee's Deed).  Also prior to the execution of the 10/27/04 Assignment, 19015 Old Jamestown had been conveyed by the purchaser under the 4/1/04 Trustee Deed to an individual named Larry Ledbetter.

On October 27, 2004 – the same day on which the 10/27/04 Release was executed, the same day on which the 10/27/04  Assignment was executed, and the same day on which Plaintiff contracted to purchase 4433 Kossuth – Plaintiff contracted to purchase 19015 Old Jamestown for $220,000.00.  Plaintiff closed on his purported purchase of 19015 Old Jamestown on December 3, 2004 ((The Old Jamestown Closing), just six (6) days before he closed his purchase of 4433 Kossuth. (The Buyer's Old Jamestown Settlement Statement).  The Buyer's Old

Jamestown Settlement Statement identifies plaintiff as a "borrower." Line 120 of the Buyer's Old Jamestown Settlement Statement states as follows: "Gross amount due from borrower: $226,210.33." Line 202 of the Buyer's Old Jamestown Settlement Statement states as follows: "Principal amount of new loan(s): $176,000.00." Line 206 of the Buyer's Old Jamestown Settlement Statement states as follows: "Seller Carryback: $33,000.00."  Line 303 of the Buyer's Settlement Statement states as follows: "CASH (X) FROM ( ) TO BORROWER: $17,210.33."  The sum of Lines 202, 206, and 303 of the Buyer's Settlement Statement is equal to the amount stated in Line 120.

In conjunction with the Old Jamestown Closing, a General Warranty Deed for 19015 Old Jamestown was executed in favor of Plaintiff by Christopher Hansen – the same individual who had signed the 10/27/04 Assignment – on behalf of Jeremy Smith.
(The 12/3/04 Smith – Howard Deed).

In conjunction with the Old Jamestown Closing, Plaintiff executed a deed of trust which grants a security interest in 19015 Kossuth. (The 12/3/04 Howard – Jamestown Deed of Trust).  The 12/3/04 Howard – Jamestown Deed of Trust states that it secures repayment of a promissory note in the amount of $176,000.00.  The amount of the 12/3/04 Howard – Jamestown Deed of Trust is

equal to Line 202 of the 12/3/04 Buyer's Old Jamestown Settlement Statement. The sum total of money paid by Plaintiff at the Old Jamestown Closing relating to 19015 Old Jamestown was $17,210.33. The remainder of Plaintiff's purchase price for 19015 Old Jamestown was paid via a "new" loan in the amount of $176,000.00 and a seller carryback loan for $33,000.00.

In conjunction with the Old Jamestown Closing, BIS Investments issued a written payment statement for $187,000.00. (The BIS Investments Old Jamestown Payoff Statement). The BIS Investments Old Jamestown Payoff Statement states that it was faxed to "The Mortgage Source" by "Barb Jones."

In conjunction with the Old Jamestown Closing, a seller's Settlement Statement (The Seller's Old Jamestown Settlement Statement) was prepared. The sum of $187,000.00 was paid to BIS Investments in conjunction with the Old Jamestown Closing.

In conjunction with the Old Jamestown Closing, BIS Investments executed a document which purported to release the 10/31/01 Smith – Cendant Deed of Trust. (The BIS Investments Old Jamestown Release). The BIS Investments Old Jamestown Release states that it was executed by Kimberly Haskins and notarized by Barbara A. Jones.

In conjunction with the Old Jamestown Closing, title work was ordered

- 13 -

from ATS by "Derrick Howard" of "Mortgage Source."

The Mortgage Source was paid a broker fee in conjunction with the $176,000.00 loan that was made in conjunction with the Old Jamestown Closing.

The title insurance schedules under which Plaintiff seeks relief with respect to 19015 Old Jamestown (The 19015 Old Jamestown Schedules) contain the following disclaimer: "This commitment is invalid unless the Insuring Provisions and Schedules A and B are attached."

Defendant has not been able to locate America's Title Source's original file for the December 3, 2004 closing.   ATS never reported to Defendant that it had issued – or was supposed to issue – a policy of title insurance to Plaintiff in conjunction with a transaction involving 19015 Old Jamestown. ATS never remitted to Defendant any portion of any premiums that it may have collected in conjunction with a transaction involving 19015 Old Jamestown.

To the extent Plaintiff is deemed to have been owed a policy of title insurance in conjunction with the Old Jamestown Closing, the form of that policy would be the 1992 Owner Policy promulgated by the American Land Title Association.

In 2005, Defendant received a claim from the holder of the 12/3/04 Howard – Jamestown Deed of Trust.  That claim was predicated upon the fact that 12/3/04

- 14 -

Howard – Jamestown Deed of Trust did not encumber 19015 Old Jamestown because title was instead vested in Ledbetter. Defendant paid the holder of the 12/3/04 Howard – Jamestown Deed of Trust the sum of $176,000.00 in order to resolve its claim.

Defendant has never been informed of any litigation involving 19015 Jamestown.

Paragraph 3 of the Exclusions from Coverage in a 1992 ALTA Owner's Policy of Title Insurance excludes the following matters from coverage:

3. Defects, liens, encumbrances, adverse claims or other matters:

(a) created, suffered, assumed or agreed to by the insured claimant;
(b) not known to the Company, not recorded in the public records at the Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this Policy.
(c) resulting in no loss or damage to the insured claimant.

Paragraph 3 of the Conditions and Stipulations of a 1992 ALTA Owner's Policy of Title Insurance provides, in relevant part, that the insured shall promptly notify the Company in writing in the case of any litigation known to the insured "which is adverse to the title to the estate or interest as insured or which might cause loss or damage for which the Company might be liable by virtue of this policy."

Paragraph 3 of the Conditions and Stipulations of a 1992 ALTA Owner's Policy of Title Insurance further provides, in relevant part, that "if prompt notice shall not be given to the Company, then as to the insured, all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required."

Paragraph 4 of the Conditions and Stipulations of a 1992 ALTA Owner's Policy of Title Insurance provides, in relevant part, that "upon written request of the insured" the insurer "shall provide for the defense of the insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect."

The title commitment for 4433 Kossuth provides, in relevant part, that "This commitment is invalid unless the Insuring Provisions and Schedules A and B are attached."

The settlement statement from Plaintiff's acquisition of 4433 Kossuth states that only a lender's policy of title insurance was purchased and makes no indication that an owner's policy was purchased.

Both the buyers settlement statement and the seller's settlement statement from Plaintiff's purported acquisition of 19015 Old Jamestown state that only a lender's policy of title insurance was purchased and makes no indication that an

owner's policy was purchased.

The final title commitment for 4433 Kossuth provides, in relevant part that the only deed of trust encumbering 4433 Kossuth was the 1/22/04 BIS Deed of Trust.

The title commitment for 19015 Old Jamestown provides, in relevant part, that the property was owned by Jeremy Smith and was subject to the 10/31/01 Smith – Cendant Deed of Trust which had been assigned to BIS via the 10/27/04 Assignment.

Plaintiff filed Cause Number 0722-CC08532 in the Circuit Court of the City of St. Louis on October 1, 2007, and the matter was dismissed on January 23, 2009.

Plaintiff filed Cause Number 0922-CC00965 in the Circuit Court of the City of St. Louis on February 27, 2009, and default judgment was entered in Plaintiff's favor on July 22, 2009, declaring the 12/9/04 Howard – People's Choice Deed of Trust to be void.

Plaintiff was served with process in Cause Number 0922-CC09447 November 5, 2009 and he filed an Answer on December 16, 2009.

The closing protection letters for 4433 Kossuth and 19015 Old Jamestown provide reimbursement for loss arising from the following matters:

1. Failure of the Title Agency or Title Agent to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you; or

2. Fraud or dishonesty of the Title Agency or Title Agent in handling your funds or documents in connection with such closings.

**Discussion**

**Summary Judgment Standard**

The standard for summary judgment is well settled.  In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005).  The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enter. Bank*, 92 F.3d at 747.  Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but

- 18 -

by affidavit or other evidence must set forth specific facts showing that a genuine

issue of material fact exists.  Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256;

*Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "'Only disputes over facts

that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 248, 106 S.Ct. 2505 (1986)." *Hitt v. Harsco Corp.* 356 F.3d 920, 923

(8th Cir. 2004).  An issue of fact is genuine when "a reasonable jury could return

a verdict for the nonmoving party" on the question. *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. at 248; *Woods v. DaimlerChrysler Corp.,* 409 F.3d at 990.  To

survive a motion for summary judgment, the "nonmoving party must 'substantiate

his allegations with sufficient probative evidence [that] would permit a finding in

[his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson*

*v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)."

*Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003).  "[A]

complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at

323.  The Court will review the facts in this case with the stated standard in mind.

Defendant urges the Court to find Plaintiff engaged in a mortgage fraud

scheme in which he would first alter baseless liens against properties.  Thereafter,

- 19 -

he would contract to purchase the properties for amount which would be sufficient to satisfy his allegedly baseless liens.  Plaintiff would then secure purchase-money financing to complete the purchases, which purchase-money would end up with Plaintiff.  Furthermore, Defendant argues that in the event Plaintiff needed to have title issues addressed in order to receive his purchase-money financing or complete his purchases, he and/or his employees would simply fabricate whatever was needed.

The Court agrees that one who comes into Court with unclean hands is not entitled to the Court's equity powers.  *Mahaffy v. City of woodson Terrace,* 609 S.W. 2d 233, 238 (Mo.App. E.D. 1980)("It is well settled that a court of equity will not aid a plaintiff who comes into court with unclean hands.")  See also *Purcell v. Cape Girardeau County Com'n*, 322 S.W.3d 522, 523 (Mo.banc. 2010. ("A litigant with unclean hands generally is not entitled to equitable relief such as an injunction or declaratory judgment.") Defendant's argument, however, is premised on Plaintiff's knowledge of fraudulent acts, which, assuming *arguendo*, to be true, were taken by his company and/or his employees.  Defendant merely asserts that plaintiff knew of all the actions involved in the transactions, but presents to the Court nothing except basically the argument "how could Plaintiff not know."  It appears to the Court, therefore, that this is an insufficient basis

- 20 -

upon which the Court could find that there exist no genuine issues of material fact entitling Defendant to judgment as a matter of law.

Having acknowledged Defendant's unclean hands argument entails a more closer analysis than mere speculation, the Court finds that Defendant is entitled to judgment as a matter of law based upon Plaintiff's failure to present any evidence to establish that Plaintiff and Defendant are parties to any insurance contracts on which Plaintiff can base his claims.  The evidence before the Court establishes that Plaintiff did not purchase any title insurance coverage in conjunction with either property at issue.  The settlement statements prepared in conjunction with the closings on both properties clearly confirm that no owner's title insurance coverage was set or collected.  A fundamental tenet of insurance law is that where premiums are not paid as required under the insurance contract, there is no insurance coverage for the insured.  *Robertson v. Reliable Life Ins. Co*, 570 S.W.2d 787; *Wright v. Blevin*, 380 S.W.3d 8 (MO.App. E.D. 2012).

The undisputed facts establish that Plaintiff did not purchase title insurance from Defendant, and therefore is not entitled to receive owner's title insurance coverage in conjunction with either of the subject properties.

## <u>Conclusion</u>

In conclusion, the Court finds that, in viewing the facts in the light most

favorable to Plaintiff, Plaintiff has failed to establish that he had valid title

insurance such that he is entitled to recovery.  Summary Judgment is therefore

warranted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary

Judgment, [Doc. No. 80], is **GRANTED.**

A separate judgment will be entered upon the conclusion of all pending

issues herein.

Dated this 22nd day of July, 2013.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE