UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DERRICK HOWARD, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:10CV2368 HEA |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, | ) |
| Defendant, | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Reconsideration [Doc. No. 158], and Defendant's Response thereto [Doc. No. 165]. For the reasons that follow, the Court will deny Plaintiff's Motion for Reconsideration, and vacate the Court's March 17, 2015 Opinion, Memorandum and Order supporting judgment in favor of Defendant. This Opinion, Memorandum and Order will supersede the March 17, 2015 Opinion, and will stand in support of the March 17, 2015 Judgment entered in favor of Defendant against Plaintiff.

### Introduction

Plaintiff, who is proceeding *pro se* and is currently incarcerated, brought this action seeking damages from Defendant for alleged insurance contract breaches relative to certain pieces of real estate located at 4433 Kossuth, St. Louis, Missouri 63115 and 19015 Old Jamestown Road, Florissant, Missouri, 63034. Plaintiff also sought a Declaratory Judgment from this Court that he was an insured party. Defendant sought summary judgment based on its arguments that Plaintiff has engaged in inequitable conduct; that he never paid for and was not covered under any insurance contract; and that, even if he had paid for and received an insurance policy from Defendant, his claims would not be covered.

### Procedural Background

Plaintiff initiated this action in the District of West Virginia on December 8, 2010. It was transferred to this District on December 20, 2010. Plaintiff filed an Amended Complaint on July 5, 2011, and the Court set a discovery deadline of April 23, 2012. By Order entered on May 8, 2012, the Court continued the discovery deadline to July 27, 2012. Plaintiff claimed throughout these proceedings that, during his incarceration, he mailed documents and other evidence central to his case to non-party Carolyn Jackson ("Jackson") for "safe keeping." Upon Plaintiff's request, the Court issued a subpoena to Jackson for this evidence, which was returned executed on June 21, 2012.[1]

Defendant filed its Motion for Summary Judgment on October 11, 2012, nearly two years after Plaintiff filed his initial Complaint. [Doc. No. 80]. Over the course of the next nine months, the Court granted multiple extensions for Plaintiff to respond to Defendant's Motion for Summary Judgment. The extensions were all requested, at least in part, to afford Plaintiff additional time to secure the aforementioned evidence from Jackson. The Court finally granted Defendant's Motion for Summary Judgment on July 22, 2013, finding that Defendant was entitled to judgment as a matter of law because Plaintiff had failed to present any evidence to establish that Plaintiff and Defendant were parties to any insurance contracts on which Plaintiff could base his claims. [Doc. No. 106].[2] To the contrary, evidence before the Court—namely, the settlement statements prepared in conjunction with the closings on both properties—appeared to confirm that no owner's title insurance was set or collected.

Thereafter, Plaintiff requested that the Court vacate its entry of Summary Judgment on the grounds that Plaintiff had requested from the Court, but had not received, a new copy of Defendant's Motion for Summary Judgment. Plaintiff further advised the Court that he filed a

---

[1] Plaintiff had advised the Court that Jackson was terminally ill and that the evidence would be lost forever when she passed away.

[2] In so holding, the Court rejected Defendant's equitable "unclean hands" argument.

response to Defendant's Motion for Summary Judgment with the correctional counselor of his prison prior to the date on which the Court granted Defendant's Motion for Summary Judgment, but that the response was never mailed to the Court.[3] Plaintiff therefore requested "an order granting Plaintiff leave to refile his timely and previously filed response to [Defendant's] Motion for Summary Judgment." [Doc. No. 109 at 2]. On April 14, 2014, the Court vacated Judgment and ordered Plaintiff to file his response within thirty days.

After granting Plaintiff's request for an additional sixty days to file a response, Plaintiff filed his Response on June 9, 2014. [Doc. No. 121]. The only evidentiary support Plaintiff included for his claim that he had paid insurance premiums was his affidavit, in which he asserted his belief that Jackson would testify under oath that she and Sharon Money personally paid the premiums for owner's insurance in cash and received a hand-written receipt. Thereafter, Defendant filed its Reply. [Doc. No. 127].

On March 17, 2015, the Court again granted Defendant's Motion for Summary Judgment and entered judgment in Defendant's favor. [Doc. Nos. 145, 146]. The Court noted that, over four years after Plaintiff initiated this action, and despite ample opportunity, Plaintiff had failed to produce any evidence controverting the fact that the settlement statements prepared in conjunction with the closings on both properties confirmed that no owner's title insurance coverage was set or collected. Thus, the facts before the Court at that time established that Plaintiff did not purchase title insurance from Defendant, and therefore was not entitled to receive owner's title insurance coverage in conjunction with either of the subject properties.

Plaintiff filed a Notice of Appeal on April 13, 2015. [Doc. No. 149]. On May 1, 2015, Plaintiff filed the instant Motion for Reconsideration, providing—for the first time—what he

---

[3] Plaintiff attached a letter to the Court from the correctional counselor confirming the veracity of these events.

purports to be the above referenced hand-written receipts for his purchase of insurance from Defendant's agent for the property in question.

The Court initially addressed Plaintiff's Motion for Reconsideration in an Opinion, Memorandum and Order entered on May 6, 2015. [Doc. No. 159]. Therein, the Court noted that the sole ground upon which the Court relied in granting summary judgment in Defendant's favor was Plaintiff's failure to create a genuine issue of fact regarding his alleged purchase of title insurance, and that the exhibits to Plaintiff's Motion for Reconsideration appear to create such an issue. The Court therefore found that, at the very least, Plaintiff's Motion for Reconsideration raised a substantial issue to the very ground upon which the Court based its decision to grant summary judgment. [*Id.*] [citing Fed. R. Civ. P. 62.1].[4] Accordingly, the Court entered an Order stating that Plaintiff's Motion raises a substantial issue. Based on this Court's Order, the Eighth Circuit remanded to for further proceedings.

**Factual Background**

Plaintiff owns or owned BIS Investments, L.L.C. ("BIS Investments"). One of BIS Investments' organizers is Kimberly Haskins, who stated in paperwork filed with the Missouri Secretary of State's office that her address was 2555 Stirrup Lane, Florissant, Missouri, 63033 as of 2002.

**A.    4433 Kossuth**

On January 22, 2004, BIS Investments recorded a deed of trust against the real estate commonly known as 4433 Kossuth Avenue in St. Louis, Missouri. ("The 1/22/04 BIS Deed of Trust"). The 1/22/04 BIS Deed of Trust states that it secures repayment of $60,000.00 by Clara Jones, and that it was executed by Claudia Dorsey on behalf of Clara Jones. By no later than

---

[4] Federal Rule of Civil Procedure 62.1 provides that, with regard to a Motion for Reconsideration, the Court may: "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."

March 24, 2004, Plaintiff knew that the following deed of trust had been recorded against 4433 Kossuth prior to the recordation of the 1/22/04 BIS Deed of Trust: deed of trust dated December 29, 1999 and recorded on January 14, 2000 in Book M1601, Page 1909 of the St. Louis City, Missouri recorder's office. ("The 12/29/99 Deed of Trust"). The 12/29/99 Jones Deed of Trust states that it secures repayment of $13,000.00 by Clara Jones, and names Tandy L. Hairston as the trustee for the beneficiary.

Plaintiff entered into a contract to purchase 4433 Kossuth for $60,000.00 on October 27, 2004. At the time he contracted to purchase 4433 Kossuth for $60,000.00, Plaintiff had actual knowledge that the 12/29/99 Jones Deed of Trust had been recorded. On October 27, 2004, the same day as plaintiff contracted to purchase 4433 Kossuth for an amount of money equal to the 1/22/04 BIS Deed of Trust, a document purporting to release the 12/29/99 Jones Deed of Trust was executed. ("The 10/27/04 Release"). The signature on the 10/27/04 Release reads "Tandy L. *Harrison*" while the notary block states that it was signed by "Tandy L. *Hairston*" on behalf of M L & Foreclosure Services, Inc. ("M L & L Foreclosure"). Plaintiff knew Hairston prior to October 27, 2004, as evidenced by Plaintiff having witnessed Hairston's sworn statement in an affidavit in a related case in March of 2004. [Case No. 4:10CV2367 CDP, Doc. No. 2-1 at 49–50].

M L & L Foreclosure was formed for the purpose of fulfilling trustee functions in conjunction with real estate foreclosures. Hairston was never employed by, associated with, or affiliated with M L & L Foreclosure in any way. Hairston did not have authority to execute the 10/27/04 Release on behalf of M L & L Foreclosure. As of October 27, 2004, M L & L did not have authority to release the 12/29/99 Jones Deed of Trust on behalf of its owner and holder.

The 10/27/04 Release was notarized by Barbara Jones. As of October 27, 2004, Barbara Jones was the office manager of BIS Investments, and owned the real estate commonly known as

2555 Stirrup Lane, Florissant, Missouri, 63033, which is the same address that Kimberly Haskins listed as her own in BIS Investments' Articles of Organization.

Plaintiff closed his acquisition of 4433 Kossuth on December 9, 2004. Plaintiff acquired title to 4433 Kossuth on December 9, 2004. ("The 12/9/04 Jones–Howard Deed"). The 12/9/04 Jones–Howard Deed states that it was executed by John Jones on behalf of Clara Jones. John Jones had previously been granted power of attorney for Clara Jones. ("The John Jones–Clara Jones Power of Attorney"). The John Jones–Clara Jones Power of Attorney was notarized by Barbara A. Jones, the same person who executed the 10/27/04 Release and who then owned the real estate which one of BIS Investments' organizers listed as her address in its Articles of Organization.

In conjunction with his acquisition of 4433 Kossuth, Plaintiff executed a Settlement Statement dated December 9, 2004. ("The Buyer's Kossuth Settlement Statement"). The Buyer's Kossuth Settlement Statement states that it is taken subject to a $12,000 loan.

There is recorded in the St. Louis City, Missouri's land records a deed of trust which is dated December 9, 2004 and which purports to have been executed by Plaintiff in favor of People's Choice Home Loan, Inc. ("The 12/9/04 Howard –People's Choice Deed of Trust"). The 12/9/04 Howard – People's Choice Deed of Trust states that Plaintiff is granting a security interest in 4433 Kossuth, and securing repayment of a promissory note in the amount of $42,000.00 by Plaintiff.

The sum total of money paid by plaintiff at closing in order to acquire 4433 Kossuth was $10,545.93. The remainder of plaintiff's purchase price for 4433 Kossuth was paid with proceeds from a "new" loan in the amount of $42,000.00 and a $12,000.00 loan that Plaintiff took title "subject to." Plaintiff has repeatedly attacked the validity of the 12/9/04 Howard – People's

Choice Deed of Trust and the purchase-money debt which it secures, but not the 12/9/04 Jones – Howard Deed by which he acquired title to 4433 Kossuth.

In conjunction with Plaintiff's acquisition of 4433 Kossuth, BIS Investments issued a written payoff statement for $60,000.00. ("The BIS Investments Kossuth Payoff Statement"). The BIS Investments Kossuth Payoff Statement states that it was faxed to "The Mortgage Source" by "Barb Jones." Also in conjunction with plaintiff's acquisition of 4433 Kossuth, a Seller's Settlement Statement was also prepared. ("The Seller's Kossuth Settlement Statement"). The Seller's Kossuth Settlement Statement states that $60,000.00 was paid to Plaintiff's company, BIS Investments, in conjunction with Plaintiff's acquisition of 4433 Kossuth. None of the proceeds disbursed in conjunction with Plaintiff's acquisition of 4433 Kossuth were paid towards any mortgages other than the 1/22/04 BIS Deed of Trust.

Plaintiff closed his acquisition of 4433 Kossuth at America's Title Source, Inc. ("ATS"). As of June 2004, ATS's Directors were Robert E. Metzler and Charlene Barban. The Mortgage Source, LLC ("The Mortgage Source") is a Missouri LLC formed by Kerry Barban and for whom Robert E. Metzler serves as registered agent. The Mortgage Source was paid a broker fee in conjunction with the $42,000.00 loan that was made in conjunction with plaintiff's acquisition of 4433 Kossuth.

In conjunction with Plaintiff's acquisition of 4433 Kossuth, title work was ordered from ATS by "Derrick Howard" of "Mortgage Source." In 2004, ATS was authorized to issue commitments for title insurance and policies of title insurance on behalf of Defendant. Defendant terminated its agency agreement with America's Title Source on August 14, 2005.

Following the termination of ATS as an agent, Defendant took possession of various files which had been created and maintained by ATS. One of the ATS files now in Defendant's possession is for the transaction in which Plaintiff acquired 4433 Kossuth. The ATS file contains

a marked-up document which includes a handwritten notation that the 12/29/99 Jones Deed of Trust was "released."

**B.      19015 Old Jamestown Road**

On October 27, 2004—the same day on which the 10/27/04 Release was Signed—Plaintiff's company, BIS Investments, took assignment of a deed of trust against 19015 Old Jamestown Road in Florissant, Missouri. ("The 10/27/04 Assignment"). The 10/27/04 Assignment purported to assign to BIS Investments a $199,500.00 deed of trust given by Jeremy Smith in favor of Cendant Mortgage Corporation on August 31, 2001. ("The 10/31/01 Smith – Cendant Deed of Trust").

The 10/27/04 Assignment stated that it was granted by Christopher Hansen on behalf of Cendant Mortgage Corporation. The 10/27/04 Assignment was notarized by Barbara A. Jones, the same person who notarized the 10/27/04 Release and the John Jones – Clara Jones Power of Attorney, and who then owned 2555 Stirrup Lane in Florissant, Missouri, which is the same address listed by one of BIS Investments' organizers in its Articles of Organization.

On November 10, 2003, prior to the execution of the 10/27/04 Assignment, Hansen—who executed the 10/27/04 Assignment on behalf of Cendant Mortgage Corporation—had been granted power of attorney for Jeremy Smith. ("The 10/10/03 Smith – Hansen POA"). The 10/10/03 Smith – Hansen POA was notarized by Barbara A. Jones.

At the time the 10/31/01 Smith – Cendant Deed of Trust was purportedly assigned to BIS Investments by Hansen on behalf of Cendant Mortgage Corporation, it had already been extinguished via foreclosure. ("The 4/1/04 Trustee's Deed"). Also prior to the execution of the 10/27/04 Assignment, 19015 Old Jamestown had been conveyed by the purchaser under the 4/1/04 Trustee Deed to an individual named Larry Ledbetter.

On October 27, 2004—the same day on which the 10/27/04 Release was executed, the same day on which the 10/27/04 Assignment was executed, and the same day on which Plaintiff contracted to purchase 4433 Kossuth—Plaintiff contracted to purchase 19015 Old Jamestown for $220,000.00. Plaintiff closed on his purported purchase of 19015 Old Jamestown on December 3, 2004 ("The Old Jamestown Closing"), just six days before he closed his purchase of 4433 Kossuth. The Buyer's Old Jamestown Settlement Statement identifies plaintiff as a "borrower." Line 120 of the Buyer's Old Jamestown Settlement Statement states as follows: "Gross amount due from borrower: $226,210.33." Line 202 of the Buyer's Old Jamestown Settlement Statement states as follows: "Principal amount of new loan(s): $176,000.00." Line 206 of the Buyer's Old Jamestown Settlement Statement states as follows: "Seller Carryback: $33,000.00." Line 303 of the Buyer's Settlement Statement states as follows: "CASH (X) FROM ( ) TO BORROWER: $17,210.33." The sum of Lines 202, 206, and 303 of the Buyer's Settlement Statement is equal to the amount stated in Line 120.

In conjunction with the Old Jamestown Closing, a General Warranty Deed for 19015 Old Jamestown was executed in favor of Plaintiff by Christopher Hansen—the same individual who had signed the 10/27/04 Assignment—on behalf of Jeremy Smith. ("The 12/3/04 Smith – Howard Deed"). Also in conjunction with the Old Jamestown Closing, Plaintiff executed a deed of trust which grants a security interest in 19015 Kossuth. ("The 12/3/04 Howard – Jamestown Deed of Trust"). The 12/3/04 Howard – Jamestown Deed of Trust states that it secures repayment of a promissory note in the amount of $176,000.00. The amount of the 12/3/04 Howard – Jamestown Deed of Trust is equal to Line 202 of the 12/3/04 Buyer's Old Jamestown Settlement Statement. The sum total of money paid by Plaintiff at the Old Jamestown Closing relating to 19015 Old Jamestown was $17,210.33. The remainder of Plaintiff's purchase price for 19015 Old Jamestown

was paid via a "new" loan in the amount of $176,000.00 and a seller carryback loan for $33,000.00.

BIS Investments issued a written payment statement for $187,000.00 in conjunction with the Old Jamestown Closing. ("The BIS Investments Old Jamestown Payoff Statement"). The BIS Investments Old Jamestown Payoff Statement states that it was faxed to "The Mortgage Source" by "Barb Jones." Further, a seller's Settlement Statement ("The Seller's Old Jamestown Settlement Statement") was prepared. The sum of $187,000.00 was paid to BIS Investments in conjunction with the Old Jamestown Closing. BIS Investments executed a document which purported to release the 10/31/01 Smith – Cendant Deed of Trust. ("The BIS Investments Old Jamestown Release"). The BIS Investments Old Jamestown Release states that it was executed by Kimberly Haskins and notarized by Barbara A. Jones.

Title work was ordered from ATS by "Derrick Howard" of "Mortgage Source." The Mortgage Source was paid a broker fee in conjunction with the $176,000.00 loan that was made in conjunction with the Old Jamestown Closing.

In 2005, Defendant received a claim from the holder of the 12/3/04 Howard– Jamestown Deed of Trust. That claim was predicated upon the fact that 12/3/04 Howard – Jamestown Deed of Trust did not encumber 19015 Old Jamestown because title was instead vested in Ledbetter. Defendant paid the holder of the 12/3/04 Howard – Jamestown Deed of Trust the sum of $176,000.00 in order to resolve its claim.

**C.**     **The American Land Title Association Owner's Policy of Title Insurance**

To the extent Plaintiff is deemed to have been owed a policy of title insurance relating to his acquisition of 4433 Kossuth or 19015 Jamestown, the form of those policies would be the 1992 Owner Policy promulgated by the American Land Title Association ("ALTA"). Paragraph 3

of the Exclusions from Coverage in a 1992 ALTA Owner's Policy of Title Insurance excludes the following matters from coverage:

> 3. Defects, liens, encumbrances, adverse claims or other matters:
> (a) created, suffered, assumed or agreed to by the insured claimant;
> (b) not known to the Company, not recorded in the public records at the Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this Policy.
> (c) resulting in no loss or damage to the insured claimant.

**D.     Legal Actions**

Plaintiff filed two related cases in Missouri state court. In Cause No. 0722-CC85322, Plaintiff sought to declare the 12/9/04 Howard – People's Choice Deed of Trust void. In Cause No. 0922-CC00965, Plaintiff sought to cancel the 12/9/04 Howard – People's Choice Deed of Trust. In Cause No. 0922-CC00965, Plaintiff obtained a default judgment on his petition in July of 2009. However, in Cause No. 0922-CC09447, Bank of America obtained a judgment setting aside Plaintiff's default judgment and quieting title in Bank of America's favor. In Cause No. ED 96756, Plaintiff unsuccessfully appealed the judgment divesting him of title to 4433 Kossuth and quieting title in the name of Bank of America.[5]

Plaintiff has filed several federal actions as well. In December of 2010, while he was incarcerated in West Virginia, Howard filed this and three other *pro se* actions in the United States District Court for the District of West Virginia. That court transferred the actions to this Court.[6]

**Summary Judgment Standard**

---

[5] The appeal was dismissed on procedural grounds.

[6] 4:10CV2365 CDP; 4:10CF2366 HEA; 4:10CV2367 CDP;

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The moving party has the burden to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine dispute of material fact exists. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256; *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Hitt v. Harsco Corp.*, 356 F.3d 920, 923 (8th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A dispute of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson*, 477 U.S. at 248; *Woods*, 409 F.3d at 990.

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)). "[A] complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The Court will review the facts in this case with the stated standards in mind.

## Discussion

### A. The Existence of a Contract Between the Parties

Plaintiff has now submitted handwritten receipts purporting to demonstrate that he purchased owner's title insurance on the properties at issue on November 29, 2004. [Doc. No. 158-1 at 7–8]. Defendant contends that the Court should view them as "nothing more than emblems of the fraud [Plaintiff] previously raised" in other litigation regarding these real estate transactions. [Doc. No. 165 at 2]. While this argument aligns generally with the Court's findings below, it is indisputable that the handwritten receipts create a genuine issue of material fact. Thus, the Court will vacate its March 17, 2014 Opinion, Memorandum and Order, which found that Plaintiff failed to controvert Defendant's argument that Plaintiff did not purchase said insurance. The newly submitted handwritten receipts controvert Defendant's argument that Plaintiff did not purchase owner's title insurance.[7]

### B. Unclean Hands

However, the Court now revisits Defendant's equitable "unclean hands" argument from its Motion for Summary Judgment. One who comes into Court with unclean hands is not entitled to the Court's equity powers. *Mahaffy v. City of Woodson Terrace*, 609 S.W. 2d 233, 238 (Mo. Ct. App. 1980) ("It is well settled that a court of equity will not aid a plaintiff who comes into court with unclean hands."); *see also Purcell v. Cape Girardeau County Comm'n*, 322 S.W.3d 522, 523 (Mo. banc. 2010) ("A litigant with unclean hands generally is not entitled to equitable relief such as an injunction or declaratory judgment.") (citing *City of St. Joseph v. Lake Contrary Sewer*

---

[7] The court notes that the receipt for the Kossuth property states in the typed section that it is for 4423 Kossuth, whereas the handwritten section states 4433 Kossuth. The property located at 4423 Kossuth was the subject of Plaintiff's suit in Case No. 4:10CV2366 HEA.

*Dist.*, 251 S.W.3d 362, 369 (Mo. Ct. App. 2008)). A party who participates in inequitable activity regarding the very issue for which it seeks relief will be barred by its own misconduct from receiving relief. *Purcell*, 322 S.W.3d at 524.

In December of 2004, the name "Derrick Howard" was used to obtain financing to "purchase" the parcels of real estate commonly known as 4433 and 19015 Old Jamestown Road. There is no dispute that 4433 Kossuth was subsequently sold at foreclosure sale to satisfy a debt that pre-dated the "purchase" in Mr. Howard's name. Likewise, there is no dispute that the "seller" in the 19015 Old Jamestown Road did not actually own 19015 Old Jamestown and could not have transferred title to Mr. Howard's name. At issue in this case is whether Plaintiff, Mr. Howard, is owed title insurance benefits on account of the referenced foreclosure and failure of title.

In *this* lawsuit, Plaintiff portrays the December 2004 transactions as valid purchases for which he bought title insurance from ATS, which was formerly an agent of Defendant. In *previous* litigation, however, Plaintiff has repeatedly alleged that it would have been impossible for him to consummate any real estate transactions in December of 2004 because, by then, he was already being detained in connection with a variety of criminal proceedings. Plaintiff has further alleged, in multiple lawsuits, that his name was fraudulently misappropriated and that his signature was forged.

The real estate transactions at issue closed on December 3, 2004 (19015 Old Jamestown Road) and December 9, 2004 (4433 Kossuth). [*See* Doc. No. 82 at Paras. 28 and 81; Doc No. 33-2; 82-18 at 37-39]. By then, Plaintiff had been in the United States of America's custody for more than ten months. Plaintiff was arrested on January 30, 2004. [See Case No. 4:04CR00113]. On February 3, 2004, Plaintiff was detained pending the resolution of the charges against him. [*Id.*].

Plaintiff remained in custody through April 1, 2005 when he was sentenced to imprisonment for 120 months. [*Id.* at Doc. No. 85].

In a 2007 lawsuit attacking the validity of the purchase-money debt that funded the "purchase" of 4433 Kossuth in his name, Plaintiff alleged that "he did not execute the mortgage and that the signature on the mortgage bearing Derrick Howards [sic] name was forged. At such time of signing and execution of the mortgage Derrick Howard was incarcerated and therefore it was impossible for him to appear in person to have signed, notarized and execute [sic] the above mentioned mortgage with [EMC Mortgage, Inc.]." [Doc. No. 82-11 at 2]. Plaintiff repeated these very same allegations in a 2009 lawsuit, adding that the lender had "wrongfully and unlawfully allowed a certain individual to forge [Mr. Howard's] signature thereby executing a mortgage against [Mr. Howard's] property located at 4433 Kossuth Avenue, St. Louis MO 63115." [Doc. No. 82-12 at 4-5]. In those suits, Plaintiff asked the courts to invalidate the purchase-money financing that allowed title to be conveyed into his name without unwinding the conveyance deed itself. Plaintiff sought relief that would award him property for which he never paid.

The Court now finds that Plaintiff comes before it seeking declaratory relief with unclean hands. He cannot now argue that Defendant owes him money on title insurance for real estate transactions which he repeatedly argued were fraudulent based on his claimed inability to transact them from prison.

Defendant argues that "[b]ecause the remainder of plaintiff's claims are predicated upon insurance coverage which he purports to have acquired via this same inequitable conduct, summary judgment should also be awarded in favor of Fidelity on all additional Counts of plaintiff's First Amended Complaint." [Doc. No. 81 at 7]. However, "[e]quitable defenses such as unclean hands are available only when equitable remedies are sought." *See In re Foreclosure of Liens for Delinquent Land Taxes*, 226 S.W.3d 250, 255 (Mo. Ct. App. 2007) (holding that
.

where lienholder sought a strict statutory remedy, laches and unclean hands could not be used to defend the action); *see also Sangamon Assocs., Ltd. v. Carpenter 1985 Family P'ship., Ltd.*, 165 S.W.3d 141, 145–46 (Mo. banc 2005) ("The doctrine of unclean hands is a defense that bars one who has acted wrongfully with respect to the subject of the suit from obtaining an equitable remedy.") (citing *Karpierz v. Easley*, 68 S.W.3d 565, 572 (Mo. Ct. App. 2002)). In this vein, Missouri courts have found that a defendant may not raise the equitable defense of unclean hands when a plaintiff is seeking the legal remedy of an amount allegedly owed under a contract. *See, e.g.*, *Middlewest Props. v. Myers*, 2010 Mo. App. LEXIS 1787, at *7 (Mo. Ct. App. Dec. 28, 2010).

## C. Exclusions under the ALTA Owner's Policy of Title Insurance

However, even assuming that Plaintiff purchased owner's title insurance, the Court finds that coverage would be excluded under Paragraph 3 of the Exclusions section of the ALTA Owner's Policy of Title Insurance which, again, excludes the following matters from coverage:

> 3. Defects, liens, encumbrances, adverse claims or other matters:
> (a) created, suffered, assumed or agreed to by the insured claimant;
> (b) not known to the Company, not recorded in the public records at the Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this Policy.
> (c) resulting in no loss or damage to the insured claimant.

Under Missouri law, paragraph 3(a) of the Exclusions from Coverage from an ALTA Owner's Policy applies "where the defect, lien or encumbrance results from a conscious, deliberate or affirmative act of the insured." *First Assembly Church of West Plains v. Ticor Title Ins. Co.*, 872 S.W.2d 577, 583 (Mo. Ct. App. 1994). An insured is "not obligated to defend suits which were brought about by the consequences of the acts of the insured." *Id.*

The term 'suffered' as used in a title insurance policy exclusion implies that the insured has the authority or power to prevent the lien or defect. *Fidelity Nat. Title Ins. Co. v. Doubletree*

*Partners, L.P.*, 2011 WL 4715174 (E.D. Tex. 2011) (citing Barlow Burke; LAW OF TITLE INSURANCE § 4.04 (2010)). The term 'assume' requires knowledge of the specific title defect assumed. *Id.* Likewise, the term 'agreed to' requires full knowledge by the insured of the extent and amount of the claim against the insured's title. *Id.*

Any claim by Plaintiff for title insurance coverage relative to the enforcement of the 12/29/99 Jones Deed of Trust against 4433 Kossuth would plainly be excluded under Exclusion 3(a). In that vein, Plaintiff is complaining of the fact that he acquired 4433 Kossuth subject to the 12/29/99 Jones Deed of Trust. That result, however, flows directly from Plaintiff's own intentional and purposeful conduct. He knew that the 12/29/99 Jones Deed of Trust existed before he ever contracted to purchase 4433 Kossuth. (SOF ¶ 6). As previously discussed, based upon the circumstances attendant to the execution of the 10/27/04 Fraudulent Release, he also must have known that the 10/27/04 Fraudulent Release was invalid and that the 12/29/99 Jones Deed of Trust had not been released. (SOF ¶ 12-13; ¶ 16; ¶ 21). Despite that knowledge, Plaintiff proceeded with the transaction, thereby "creating" the result of which he now complains – him having acquired title to 4433 Kossuth subject to the 12/29/99 Jones Deed of Trust. Furthermore, Plaintiff's settlement statement for the 4433 Kossuth transaction contains a line item which plainly and expressly states that plaintiff was acquiring title "subject to" a loan for $12,000.00. (SOF ¶ 32). Accordingly, any claim that plaintiff might set forth relative to the 12/29/99 Jones Deed of Trust and 4433 Kossuth would be barred under Exclusion 3(a) of any owner's title policy that he could have purchased with respect to 4433 Kossuth.

Similarly, any claim by Plaintiff for title insurance coverage relative to his lack of ownership of 19015 Old Jamestown would be excluded under Exclusion 3(a). In essence, Plaintiff is complaining about the fact that his "seller", Jeremy Smith, had already been foreclosed on and therefore was unable to convey title to Plaintiff. Again, that result flows from Plaintiff's own

intentional conduct. As previously illustrated, Plaintiff would have known that the 10/31/01 Smith – Cendant Deed of Trust was unenforceable on account of it having previously been foreclosed against Jeremy Smith and that the 10/27/04 Fraudulent Assignment, which was given solely for the benefit of Plaintiff's company, BIS, was invalid. (SOF ¶ 72-77). Again, though, Plaintiff simply followed through with his fabricated transaction (which resulted in BIS being paid $187,000.00), thereby "creating" the result of which he now complains – a complete lack of ownership of 19015 Old Jamestown. (SOF ¶ 97). Therefore, any claim that Plaintiff might set forth relative to 19015 Old Jamestown would be barred under Exclusion 3(a) of any owner's title policy that he could have purchased with respect to that real estate.

Pursuant to Exclusion 3(b) and Missouri law, there is no coverage under a title insurance policy for matters that are not recorded and not known by the insurer but for which the insured or its agents have actual knowledge. *Fleishour v. Stewart Title Guar. Co.*, 743 F.Supp.2d 1060, 1071 (E.D.Mo. 2010) (holding that a title insurer properly denied coverage for an unrecorded adverse possession claim that was known to the insured's real estate broker); *see also Spurgeon v. Coan & Elliott*, 180 S.W.3d 593, 599 (Tex.App. 2005). "The purpose of title insurance is to protect a purchaser of real estate against title 'surprises.'" *Nourachi v. First Am. Title Ins. Co.*, 44 So.3d 602, 606 (Fla.App. 2010). Accordingly, "[a]s to matters that are outside the public record and not normally discoverable via standard title examination—e.g., wild or stray deeds, instruments filed outside the chain of title, frauds, forgeries, conveyances made under undue influence or by minors or incompetents—the title insurance policy normally provides coverage, but will not if an insured has knowledge of these matters outside the public record." *Investors Title Ins. Co. v. Bair*, 2007 WL 8738625 (D.S.C. 2007).

Again, the undisputed facts in this case demonstrate that Plaintiff must have known of the invalidities associated with both the 10/27/04 Fraudulent Release and the 10/27/04 Fraudulent

Assignment, both of which served to benefit only his company, BIS, and which his own employee notarized. (SOF ¶ 11-21; ¶ 72-77). The invalidity of those documents is something that Plaintiff was obligated to report to Fidelity or ATS in writing in order to obtain title insurance coverage. (SOF ¶ 111-113). Plaintiff certainly has not alleged that those invalidities were then commemorated in the public record or that he advised Fidelity or ATS of the same. Accordingly, any claim that Plaintiff might set forth relative to the 12/29/99 Jones Deed of Trust encumbering 4433 Kossuth or him not having acquired title to 19015 Old Jamestown would be barred under Exclusion 3(b) of any owner's title policy that he could have purchased with respect to either of his transactions.

Paragraph 3(c) of the Exclusions from Coverage in 1992 ALTA Owner's Policy excludes coverage for matters resulting in no loss to the insured claimant. It would be illogical to posit that Plaintiff has incurred any loss at all in conjunction with the mortgage fraud scheme which he carried out with respect to 4433 Kossuth and 19015 Old Jamestown, let alone a loss which is tied to matters covered by title insurance. To the contrary, Plaintiff enjoyed a windfall in each instance with his company, BIS, having been paid $60,000.00 and $187,000.00, respectively, for otherwise unenforceable security interests. (SOF ¶ 51; ¶ 97). With respect to 4433 Kossuth, Plaintiff also received and enjoyed title for some period of time. And with respect to 19015 Old Jamestown, Fidelity has already paid $176,000.00 toward the satisfaction of plaintiff's purchase-money financing in resolution of his lender's title claim. (SOF ¶ 108). These undisputed, undeniable facts demonstrate that Plaintiff could not establish any cognizable loss which would be covered under any owner's title insurance coverage that he could have purchased.

Based upon the foregoing, Plaintiff's claims would be barred under any owner's policy of title insurance he could have purchased in conjunction with his transactions and Fidelity is

therefore entitled to summary judgment on all Counts 1, 2, 4, 5, 7, 8, 10, 11, 13, 14, 16, 17, 19, 20, 22 and 25 of Plaintiff's First Amended Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration [Doc. No. 158] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court's March 17, 2015 Opinion, Memorandum and Order [Doc. No. 145] is **VACATED**.

**IT IS FURTHER ORDERED** that this Opinion, Memorandum and Order **SUPERSEDES** the Court's March 17, 2015 Opinion, Memorandum and Order.

A separate judgment in accordance with this Opinion, Memorandum and Order was entered on March 17, 2015.

Dated this 24th day of August, 2015.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE